UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MATTHEW WATSON                          CIVIL ACTION

v.                                      NO. 11-758

THE CITY OF NEW ORLEANS, ET AL.         SECTION "F"


ORDER AND REASONS

Before the Court is the City of New Orleans' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c) or, alternatively, motion for summary judgment pursuant to Rule 56. For the reasons that follow, the motion is GRANTED in part (as to the plaintiff's federal claims) and DENIED in part (as to the plaintiff's state law claims); all remaining state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

**Background**

This civil rights litigation arises out of an Arkansas man's complaint that he was falsely arrested and denied medical care after a New Orleans police officer's horse stepped on his foot, as he was backing away, on the officer's command, from a fight Mr. Watson had intended to break up on Bourbon Street.

Matthew Watson was in New Orleans for a bachelor party. After having some drinks, he was walking, beer in hand, with his brother and a friend on Bourbon Street during a crowded Saturday night when

1

he saw a man beating up some women across the street.[1]  He decided to intervene.   But while Watson was making his way through the crowd to reach the fight, he saw another man hit the attacker, which knocked him down and stopped the attacker from continuing his assault on the women.   Three unidentified police officers (two mounted on horseback and one on foot) arrived at the scene and handcuffed the two men involved in the fight.  The two officers on horseback shouted at the crowd to "back-up!"  While shouting, the mounted officers advanced outward from the scene of the fight, apparently in an attempt to create space around the location where the other officers were investigating and making arrests.  Watson says that he was attempting to comply the police officers' orders, but that as he was moving backwards, the hoof of one of the officers' horses came down on the top of his foot, firmly rooting it to the ground.

Watson told the officer that he was trying to comply with his order, but that his horse's hoof was crushing his foot and he could not move.  Nonetheless, whether the police officer heard Watson's complaint or not, the police officer shouted to Watson to "back the f--- up!"  In pain, Watson attempted to shove the horse off of his foot.   The officer then pointed at Watson and shouted for "somebody" to "arrest this guy."  An officer on foot handcuffed Watson and escorted him to the streetcorner where the man involved

------

[1]The incident occurred on April 10, 2010.

in the fight was also being detained.

Watson and the other arrested individuals waited for about an hour and a half until the paddy wagon arrived to take them to Central Lockup. During the wait, Watson told the three unidentified officers that he was injured, in pain, and worried about the condition of his foot; he requested medical attention several times during the course of his wait. He also explained to the officers the series of events leading to his arrest and complained that he was falsely arrested.

Watson was charged with interference with an investigation, public drunkenness, and resisting or obstructing a police officer. After being denied medical care at the scene, Watson was transported to Central Lockup, booked, and seen at a medical window, where he was asked a series of questions. Watson informed the attendant of his injury, and again requested medical care. In response, the attendant provided Watson with two Motrin tablets; he was not seen by a doctor during the course of the night or early morning hours, when he was released.[2] All charges were eventually dropped.

On April 8, 2011 Watson sued the City of New Orleans and three unidentified police officers, invoking this Court's federal question jurisdiction over his 42 U.S.C. § 1983 claims in which he

---

[2]Watson estimates that he was arrested around 11:00 p.m. and released (when he bailed himself out) at 3:00 a.m.

3

asserts that the unidentified officers violated (1) his Fourth Amendment right to be free from unreasonable search and seizure (false arrest) and (2) his Fourteenth Amendment right (denial of medical care); Watson also invokes this Court's supplemental jurisdiction with respect to his state law claims, in which he asserts that one of the unidentified officers was negligent in injuring him and that the doctrine of *respondeat superior* applies "for all violations of state law committed by" the unidentified police officers.[3]   Watson seeks to recover damages for false arrest, negligent injury, and medical expenses, as well as reasonable attorney's fees and punitive damages.   Watson contends that he sustained serious personal injuries, including trauma to his foot (which ultimately required surgery),[4] and that he has suffered mental anguish, emotional distress, embarrassment, and humiliation.[5]

The City of New Orleans -- the only named defendant -- now requests that this Court dismiss Watson's complaint for failure to state a claim pursuant to Rule 12(c) or, alternatively, requests

---

[3]It is possible that Watson also seeks to assert state law claims for false arrest and denial of medical attention.

[4]Watson saw a doctor on Monday morning in Arkansas, at which time he was referred to an orthopedist and underwent surgery on Wednesday.

[5]In quantifying his damages, Watson seeks to recover $100,000 ($50,000 in general damages, $25,000 for the civil rights violations, and $25,000 in punitive damages), plus attorney's fees.

that the Court grant summary relief dismissing the plaintiff's
federal and state law claims.

I.

A.

The standard for deciding a motion for judgment on the
pleadings under Rule 12(c) of the Federal Rules of Civil Procedure
is the same as the one for deciding a motion under Rule 12(b)(6).
Gentilello v. Rege, 627 F.3d 540, 543-44 (5th Cir. 2010). "A motion
brought pursuant to [Rule 12(c)] is designed to dispose of cases
where the material facts are not in dispute and a judgment on the
merits can be rendered by looking to the substance of the pleadings
and any judicially noticed facts." Great Plains Trust Co. v.
Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir.
2002)(citation omitted).

In considering a Rule 12(b)(6), or a Rule 12(c), motion, the
Court "accepts 'all well-pleaded facts as true, viewing them in the
light most favorable to the plaintiff.'" See Martin K. Eby Constr.
Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004)
(quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).
But, in deciding whether dismissal is warranted, the Court will not
accept conclusory allegations in the complaint as true. Kaiser
Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d
1045, 1050 (5th Cir. 1982). Indeed, the Court must first identify
pleadings that are conclusory and, thus, not entitled to the
assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct.

5

1937, 1949 (2009). A corollary: legal conclusions "must be supported by factual allegations." Id. at 1950. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id.

To survive a Rule 12 motion to dismiss or for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 129 S.Ct. at 1949 (2009))(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief." Id. (citing Twombly, 550 U.S. at 557) (internal quotations omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public records and other matters subject to judicial notice without converting the motion into one for summary judgment. See United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003).

*B.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.
A.

Title 42, U.S.C. § 1983 creates a private right of action for violations of federally-secured rights under color of state law; it provides:

Every person who, under color of any statute, ordinance,

> regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To establish § 1983 liability, the plaintiff must satisfy three elements:

> (1)   deprivation of a right secured by the U.S. Constitution or federal law,
> (2)   that occurred under color of state law, and
> (3)   was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

Municipalities are "persons" within the meaning of § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). But "[t]hey are liable only for their own acts and not those attributed to them by principles of *respondeat superior*." Larpenter, 369 F.3d at 482 (citing Monell, 436 U.S. at 691-92). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

Thus, in determining whether municipal liability attaches, the Court looks to whether unconstitutional conduct is directly attributable to the municipality through some official custom or policy; "isolated unconstitutional actions by municipal employees will almost never trigger liability." See Piotrowski v. City of

9

<u>Houston</u>, 237 F.3d 567, 578 (5ᵗʰ Cir. 2001)(citations omitted).
Indeed, the rules for imposing municipal liability are well-
settled; proof of three elements is vital: (1) a policy maker; (2)
an official policy or custom; and (3) causation: a violation of
constitutional rights whose "moving force" is the policy or custom.
<u>Id.</u> (citing <u>Monell</u>, 436 U.S. at 694).[6]  Official municipal policy
pursuant to <u>Monell</u>, the U.S. Supreme Court has observed, "includes
the decisions of a government's lawmakers, the acts of its
policymaking officials, and practices so persistent and widespread
as to practically have the force of law."  See <u>Connick v. Thompson</u>,
131 S.Ct. 1350, 1359 (2011)(citations omitted)("These are
'action[s] for which the municipality is actually responsible.'").

*B.*

1.  Watson fails to state a <u>Monell</u> claim.

The City contends that Watson fails to state a <u>Monell</u> claim
that is plausible on its face.  The Court agrees.

Assuming that Watson has sufficiently alleged constitutional
violations (for false arrest and denial of medical care), Watson
has failed to allege an unconstitutional policy or custom, let
alone at the minimum assert that any such policy or custom caused

---

[6]Proof of these three elements is necessary "to
distinguish acts of the municipality from acts of employees of the
municipality, and thereby make clear that municipal liability is
limited to action for which the municipality is actually
responsible." <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 471
(5th Cir. 1999) (citation omitted).

10

his injury.   Rather, his claims are based on specific conduct or inaction by police officers (and ostensibly, with respect to his denial of medical care claim, personnel while in custody at Central Lockup).   Absent any allegation whatsoever attributing his constitutional violation to an official policymaker, or some policy or custom (let alone that any hypothetical policy or widespread practice was the moving force behind his constitutional violations), Watson has failed to state a <u>Monell</u> claim.

The Court notes that Watson correctly points out that the Supreme Court has rejected the application of a heightened pleading standard to §1983 claims against municipalities, when it reaffirmed that "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168 (1993).   Putting aside the current debate concerning whether <u>Iqbal</u>[7] or <u>Twombly</u>[8] (both Supreme Court cases that post-date <u>Leatherman</u>) initiate a more heightened pleading standard to claims generally (and, thus, apply equally to § 1983 claims),[9] the Court finds that the plaintiff's allegations

---

[7] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

[8] <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).

[9] <u>See</u> <u>Thomas v. City of Galveston</u>, 800 F. Supp. 2d 826, 841-42 (S.D. Tex. 2011)(collecting cases and acknowledging a split of authority).

are so thin as to even fail the ostensibly "lower" pleading threshold sanctioned in <u>Leatherman</u>.[10]

Here, Watson merely alleges that the unidentified police officers' actions in falsely arresting him and denying him medical attention constitute civil rights violations. Such conclusory pleading that focuses on the officers' conduct, and is silent as to the City's fault, fails to state a plausible claim for relief under the <u>Twombly</u> and <u>Iqbal</u> pleading requirements and fails the even lesser pleading standard suggested by <u>Leatherman</u>.[11]

    2.    Even if Watson were to have stated a claim against the City, the City is entitled to summary judgment.

Even if this Court were to indulge the allegations of Watson's complaint, a factual predicate for his <u>Monell</u> claim is glaringly absent from the record, making summary relief in favor of the City appropriate.

The parties bitterly dispute whether or not Watson's constitutional rights were violated as a result of his arrest and denial of medical care. The Court assumes, however, for the purpose of resolving the present motion that Watson could establish

---

[10]Indeed, even in <u>Leatherman</u> the plaintiff generically alleged inadequate training as a predicate for the <u>Monell</u> claim. <u>See</u> <u>Leatherman</u>, 507 U.S. 163 (1993).

[11]This Court need not weigh in on the split of authority, given that Watson fails even to allege that the individual officers' conduct failed to conform to an official policy or custom, or that they were improperly trained or negligently hired.

12

that (or at the least that genuine disputes of material issues of fact precluded summary judgment) his constitutional rights were violated.

Assuming that he was falsely arrested and wrongly denied medical care, Watson would still need to prove that some City policy or custom was the moving force behind his constitutional deprivations. The City insists that there is no evidence in the record to support such a claim, and that the City is entitled to judgment as a matter of law. The Court, again, agrees.

> It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)(emphasis in original).

Watson has not submitted any evidence that a City custom, policy, or practice was in force so as to support his Monell claim. Nor is there any record evidence to suggest that a policy or custom or widespread practice of the City caused an employee to violate Watson's constitutional rights.[12] What's left, at most, is evidence

---

[12]Watson insists in his opposition papers that widespread practice of City officials can satisfy the policy attribution principle, or that a plaintiff can simply allege that the municipal action was taken with "deliberate indifference" to known consequences. While these legal assertions are technically correct

that arguably suggests the unidentified officer was negligent in allowing his horse to get close enough to step on Watson's foot and that the other officers and personnel at Central Lockup were negligent in failing to administer medical care.  No record evidence ties any arguable negligence on the part of police officers to a City policy, custom, or practice.[13]  Mr. Watson's angry speculation falls far short.  Because the City of New Orleans "cannot be held liable *solely* because it employs a tortfeasor,"[14] summary judgment in favor of the City on the plaintiff's § 1983 claims is warranted.

Finally, as to any remaining § 1983 claims that the plaintiff attempts to assert against unidentified police officers, those claims are dismissed for failure to state a claim.  See Everson v. N.O.P.D. Officers (Names Unknown), No. 07-7027, 2009 WL 122759, at *2 (E.D. La. Jan. 15, 2009).  Watson has taken no action to amend his complaint to name the officers.[15]  And, in any event, he appears

---

in the abstract -- policies are not limited to formal pronouncements -- Watson fails to even sparely assert in his complaint, and the record is devoid of any support, that any of the various guises municipal policy can take are present here.

[13]Moreover: "[i]t is not enough that an illegal custom exist; municipal policymakers, who are capable of subjecting a municipality to liability, must be chargeable with awareness of the custom."  Pineda v. City of Houston, 291 F.3d 325, 330-31 (5th Cir. 2002).

[14]Monell, 436 U.S. at 69 (emphasis in original).

[15]Indeed, any attempt to do so might ultimately result in dismissal on the basis of prescription.

to abandon any such claims by failing to brief the issue in his opposition papers.

III.

This Court has subject matter jurisdiction over Watson's § 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Section 1367(c) provides that "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- ... (3) the district court has dismissed all claims over which it has original jurisdiction." Because this Court has determined that dismissal of Watson's § 1983 claims is warranted, this Court declines to exercise supplemental jurisdiction over any remaining state law claims.

Accordingly, the City's motion to dismiss or for summary judgment is GRANTED in part, insofar as the plaintiff's federal claims are hereby dismissed with prejudice, and the City's motion is DENIED in part with respect to the plaintiff's state law claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are hereby dismissed without prejudice.

New Orleans, Louisiana, April 19, 2012

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

15